## CATHOLIC HOME FOR AGED LADIES, Inc., v. DISTRICT OF COLUMBIA.

### No. 9318.

United States Court of Appeals District of Columbia.

Argued April 8, 1947.

Decided May 26, 1947.

Mr. Augustus P. Crenshaw, III, of Washington, D. C., with whom Mr. Francis W. Hill, Jr., of Washington, D. C., was on the brief, for petitioner.

Mr. Chester H. Gray, Principal Assistant Corporation Counsel for the District of Columbia, of Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, D. C., and Hardy L. Walker, Assistant Corporation Counsel, D. C., both of Washington, D. C., were on the brief, for respondent.

Before GRONER, Chief Justice., and EDGERTON and PRETTYMAN, Associate Justices.

GRONER, Chief Justice.

Petitioner, as everyone admits, is a non-profit, charitable organization. It was incorporated under the District of Columbia laws in 1911 to maintain a home for aged ladies of the Catholic faith who were without means of self-support. For many years it has operated in Georgetown a home for indigent old ladies who might otherwise have become public charges. The occupants contributed nothing to the cost of operation and maintenance. They lived wholly on the charity of petitioner. In 1922 it became apparent to the managers of this charity that there was need of another organization for the accommodation of other old ladies who had no one to care for them, but who had some small financial means for use in their support. Accordingly, petitioner purchased the property, which is the subject of this proceeding, and on which there was a residential building, used its endowment funds for. this purpose, and established an auxiliary home for old ladies who were able to contribute something, but not enough to cover the cost of their maintenance and support. Presumably in order to segregate the two charities, petitioner incorporated the new organization under the name of Saint Margaret Mary House and turned over to it, rent free, the recently purchased property.

In 1943, and annually since, the District has insisted upon its right to tax the Saint Margaret Mary property. And the Tax Board on appeal to it sustained the tax. For reasons which we will state briefly we think the tax was wrongly imposed.

In 1942 Congress, after extensive hearings, established the kinds and classes of property in the District of Columbia which would thereafter be exempt from taxation, and Senator McCarran, who sponsored the Senate bill and reported it, explained its purpose in these words:

"The bill embraces 4 classes of property which would be exempt under its terms—

property which is devoted to education, with respect to which no profit inures; property which is devoted to religious purposes, with respect to which no profit inures; property devoted to charity, with respect to which no profit inures; and property which is devoted to science."[1]

Both the House and Senate reports define the purpose of the bill as follows:

"This bill defines privately owned nonprofit institutions which, because of their religious, charitable, educational, and scientific activities in the District, should be permitted to operate without the burden of taxation. The bill seeks to exclude from tax-exempt status those institutions which claim to perform this type of work, but are organized and operated for private profit and gain in contrast to those which derive no profit or gain from their operation."[2]

 Nobody for a moment questions that petitioner's property, the use of which was transferred to Saint Margaret Mary House, is dedicated wholly and exclusively to charity. Nobody suggests that a dollar of profit has accrued from its use since the organization was established, but the Board was of opinion that the statutory exemption was not applicable "because the property was not used by the owner, and was not owned by the user." The Board justified this conclusion under the language of subparagraph (h) of the statute.[3] That section provides for exemption from taxation in the case of "buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia." The Board felt that the exemption would only apply where there is a *concurrence of ownership and operation in one institution.* But we think this is an erroneous construction of the Congressional language and in the very teeth of its purpose and intent. A more logical construction is that there must be use by a charitable organization and ownership by a charitable organization. Certainly, nothing can be found in the debates, nor in the reports of the Committees of the House or Senate, to support the Board's conclusion, but, to the contrary, everything that appears indicates that the use of the property by the charity should be the controlling factor.

In the present case the property of the old ladies' home sought to be taxed belongs to the originally incorporated charity and is operated by its auxiliary charity. The situation is, therefore, literally within the statutory language, viz.—property belonging to and operated by institutions not organized or operated for private gain. And if we look through the shadow to the substance we find that both charities are, except in name, one and the same, though separately organized to accomplish each its specific purpose—in both instances—not profit but only charity. In the circumstances, we think the Board's conclusion must be reversed.

Reversed.

---

[1] 88 Cong.Rec.9485 (1942).

[2] H.R.Rep.No.2635, 77th Cong., 2d Sess. (1942) 1; Sen.Rep.No.1634, 77th Cong., 2d Sess. (1942) 1, 2.

[3] 56 Stat. 1089, Dec. 24, 1942, D.C.Code § 47—801a (h), Supp.1946.