## CONGREGATIONAL HOME OF DISTRICT OF COLUMBIA v. DISTRICT OF COLUMBIA.

### No. 11459.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 9, 1953.

Decided Feb. 12, 1953.

Augustus P. Crenshaw, III, Washington, D. C., with whom Francis W. Hill, Jr., Washington, D. C., was on the brief, for petitioner.

George C. Updegraff, Assistant Corporation Counsel for the District of Columbia, Washington, D. C., with whom Vernon E. West, Corporation Counsel and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for respondent.

J. Edward Burroughs, Jr., and Cary McN. Euwer, Washington, D. C., were on the brief for The George Washington University, amicus curiae, urging reversal.

Before WILBUR K. MILLER, PRETTYMAN and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The Congregational Home of the District of Columbia, a non-profit corporation, owns certain improved real estate used as a home for aged and infirm persons. Its property has for years been included in the annual assessment of real estate subject to taxation and has never been held to be exempt. An application for exemption filed with the Commissioners of the District of Columbia in 1943 was denied by them in 1945. A second application lodged with the Commissioners July 8, 1948, after the petitioner's realty had been assessed for the

---

1. This was Caddeo's contention, in support of which he relies on de Koning v. Zimmerman, D.C. E.D.Pa.1950, 89 F. Supp. 891.

then current fiscal year (July 1, 1948, to June 30, 1949), led to this litigation.

Relying on the pendency of its application for exemption, the petitioner did not pay the taxes based on the 1948–49 assessment. Nor did it pay the taxes levied on the assessments of its property for the succeeding three fiscal years, because its petition for exemption was still pending when those assessments were made. The Commissioners did not act on the application until November 14, 1951, when they denied it. Notice of the denial was mailed to the petitioner December 6, 1951. Thereupon the Congregational Home paid under protest the taxes based on the assessments for the four fiscal years ended June 30, 1949, to 1952, both inclusive, and on March 3, 1952, filed with the Board of Tax Appeals for the District of Columbia [now the District of Columbia Tax Court] a petition for the cancellation of the taxes so paid, and for appropriate refund. An amended petition was filed with the Board on March 27, 1952. The petitioner contended its property was exempt from such taxes under § 47–801a(h), D.C.Code (1940),[1] and under our decision in Catholic Home v. District of Columbia, 1947, 82 U.S.App.D.C. 195, 161 F.2d 901.

The Code permits an appeal by an institutional owner from the assessment of real estate which it believes to be exempt provided the appeal is taken within ninety days after the owner receives notice of the assessment; and a statement of taxes due

mailed to the owner constitutes such notice.[2] The Board of Tax Appeals held the Congregational Home's appeal was not filed within the time prescribed by the statute and, for that reason, dismissed for lack of jurisdiction. We are asked to review the Board's action.

Taxes for the fiscal year ended June 30, 1949, necessarily were based upon the annual assessment made just before the year began on July 1, 1948. In the same manner, taxes for the succeeding three fiscal years here involved were based on the assessments made just before the years began on July 1, 1950, 1951 and 1952.

It is conceded that on or about September first of each of the years 1948 to 1951, both inclusive, a statement of taxes due for the then current fiscal year was mailed to the Congregational Home. It thus received notice at that time each year that its property had been assessed, and so, absent any contravening consideration, the statutory period of appeal with respect to each annual assessment began to run with the mailing of the statement. It is therefore clear that the petitioner's single appeal as to all four assessments, filed March 3, 1952, was much too late to give the Board jurisdiction, unless some supervening cause or factor had extended that far the time for appealing from each of the four assessments.

The Congregational Home says its appeal was timely, despite the fact that it received notice of each annual assessment.

1. Section 47–801a(h) is as follows:
   "The real property exempt from taxation in the District of Columbia shall be the following and none other:
   *      *      *      *      *
   "(h) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia.
   *      *      *      *      *
   "*      *      *      (Dec. 24, 1942, 56 Stat. 1089, ch. 826, § 1; Apr. 9, 1943, 57 Stat. 61, ch. 41, § 1.)"

2. Section 47–801e provides that
   "Any institution, organization, corporation, or association aggrieved by any assessment of real property deemed to be exempt from taxation under the provi-

sions of sections 47–801a to 47–801f may appeal therefrom to the Board of Tax Appeals for the District of Columbia in the same manner and to the same extent as provided in sections 3 and 4 of title IX of the District of Columbia Revenue Act of 1939, as amended *      *      *. (Dec. 24, 1942, 56 Stat. 1091, ch. 826, § 5.)"
   Title IX, section 3 (which is § 47–2403 of the 1940 Code), referred to in § 801e, provides that any person aggrieved by an assessment

   "*      *      * may, within ninety days after notice of such assessment, appeal from such assessment to the board *      *      *. The mailing to the taxpayer of a statement of taxes due shall be considered notice of assessment with respect of such taxes."

The ninety-day period did not run from the mailing of the tax statements, it asserts, because its application to the Commissioners for exemption from taxation was pending and undecided when the September tax statements were mailed. When it received a statement of taxes for 1948–9, which was mailed on or about September 1, 1948, the petitioner inquired of the Assessor as to its status and was informed that no steps to collect the taxes would be taken while the application for exemption was pending, and that therefore the taxes need not be paid immediately. This assurance was repeated more than once during the years of pendency.

Finally, the Assessor advised the Congregational Home by letter dated December 6, 1951, of the denial of its claim. He enclosed tax statements for the four years and demanded payment, but said waiver of accrued penalties would be recommended if the taxes were paid before January 6, 1952. The letter mailed December 6, 1951, is to be regarded as the notice of the assessments for the four years, says the petitioner, and therefore its appeal to the Board of Tax Appeals, filed March 3, 1952, was in time, being within ninety days after the letter was mailed.

We need not now decide whether the pendency of the application for exemption suspended the running of the ninety-day limitation on petitioner's right to appeal from each separate assessment, and extended the appeal period to a date ninety days after the Assessor mailed the letter on December 6, 1951. That question will not be reached unless it be first determined that the Commissioners have the power to grant exemption from taxation after assessment; for if they lack that authority, the application to them and its long pendency could not prevent the statute from running against the petitioner ninety days after each annual tax statement was mailed, and the Board of Tax Appeals was correct in dismissing for lack of jurisdiction.

The process of assessing real estate for taxation, and the duties and powers of various officials with respect thereto, are carefully set forth in Title 47 of the D.C. Code (1940). Broadly speaking, assessment results from two steps: (a) determining what parcels of real estate are subject to taxation, and (b) determining the equalized valuations of taxable real estate to which the tax rate, later determined, is to be applied.

Those who have duties with respect to assessment are the Assessor, the Deputy Assessor, a Board of Assistant Assessors composed of "six discreet persons" appointed by the Commissioners of the District, and the Commissioners themselves. First, the Commissioners furnish to the Board of Assistant Assessors a list of all the real property in the District of Columbia and the names of the several owners thereof, so far as known. § 704. Then the three members of the Board of Assistant Assessors designated for the "assessment of real estate", § 605, determine, "from actual view and from the best sources of information in [their] reach," the value of each tract or lot, § 705, and "annually on or before the 1st Monday of January make out and deliver to the assessor of the District of Columbia a return in tabular form * * of the amount, description, and value of the real property *subject to be listed for taxation* * * *." § 706. (Emphasis supplied.)

Since the Commissioners furnish to the Board of Assistant Assessors a list of *all* the parcels of real estate in the District, and since that Board is required later to deliver to the Assessor a list showing the description and value of the real property *subject to be listed for taxation,* it is obvious that the Board of Assistant Assessors must make the initial decision as to which parcels are subject to taxation and which are exempt therefrom.

Next, equalization of the valuations fixed by the Board of Assistant Assessors is accomplished by a Board of Equalization and Review, consisting of the Assessor, the Deputy Assessor and the six members of the Board of Assistant Assessors, who convene on the first Monday of January each year and remain in session until the first Monday in April, "after which date no complaint as to valuation * * * shall be received or considered * * *."

§ 708. The work of equalization having been completed as required, not later than the first Monday of May, the list of equalized valuations of all taxable real estate is submitted to the Commissioners, and must be approved by them not later than July 1;

"* * * and when approved by the Commissioners shall constitute the basis of taxation for the next succeeding year * * *. Any person aggrieved by an assessment, equalization, or valuation * * *"

may appeal therefrom to the Board of Tax Appeals within ninety days after the succeeding October 1, § 709.

We assume, without deciding, that the Commissioners have the power, before approving the equalized valuations, not only to correct the valuations submitted to them, but also to correct the list of taxable real estate by removing therefrom any parcels they deem exempt from taxation. Under that assumption they could grant a petition for exemption filed before July first but, once they have approved the equalized valuations of real estate subject to taxation, those valuations "constitute the basis of taxation for the next succeeding year." Taxability has then been finally determined, assessment has been completed, and the Commissioners have no further function except to fix a tax rate which will raise the required revenue. A tax at that rate is then automatically levied by statute. § 501.

The Assessor next performs the clerical work of computing the taxes due with respect to each parcel of real estate and mails to the taxpayer a statement thereof which, under § 2403, "shall be considered notice of assessment with respect of such taxes."

The practice of applying to the Commissioners after July first for the exemption of real estate which has been administratively determined to be taxable and has been finally assessed—if there be such a practice—finds no support in the statutes. After the process of assessment has been completed,—that is, after the equalized valuations of all taxable property have been approved by the Commissioners—the only relief available to a taxpayer, either from an incorrect valuation or from the wrongful assessment of property thought to be exempt, is by appeal to the Board of Tax Appeals.

■ From the foregoing, we conclude the Commissioners had no power to exempt the petitioner's property from taxation for the fiscal year 1948–9 because the application which was filed July 8, 1948, came after the property had been assessed for that year. An appeal to the Board within ninety days after the tax statement was mailed on or about September 1, 1948, was then the petitioner's only remedy.

With respect to the three subsequent fiscal years involved, the problem may be said to be slightly different. The difference lies in the fact that the application filed July 8, 1948 (which is not in the record before us) may have asked a continuing exemption for future fiscal years. If so, it was pending in the hands of the Commissioners before they approved the equalized valuations of property taxable for the fiscal years beginning July 1, 1949, 1950 and 1951, and consequently was pending at a time when the Commissioners could have, had they chosen, removed the Home's property from the list before approving it.

■ This possibility does not help the petitioner, however, for two reasons: (1) In preparing the roll of real estate taxable for the fiscal year 1949–50, the Board of Assistant Assessors included the petitioner's property therein. The Board of Equalization and Review did not remove it as exempt, but listed it as taxable property in the tax roll sent to the Commissioners before May 1, 1949. Although the 1948 application for exemption was before them as they considered for nearly two months the valuations of property taxable for 1949–50, the Commissioners did not remove the petitioner's property from the list as being exempt from taxation, as they might have done. Instead they approved the list and so approved the assessment of petitioner's property for 1949–50. This action was tantamount to denying the 1948 application, if it be regarded as a claim to exemption from taxation for that fiscal year. In like manner, the Commissioners approved the

equalized valuations for 1950–1 and 1951–2 without exempting the petitioner's property and so assessed it for each of those years, although the 1948 petition for exemption was still pending before them.

(2) The second reason is that application for exemption could not be made in July, 1948, for fiscal years beginning July 1, 1949, and thereafter. Application cannot be made *in futuro,* because exemption under § 801a(h) is granted to buildings owned and operated by non-profit organizations which are *used* principally for purposes of public charity. Each institutional owner of exempt real estate is required to file with the Commissioners on or before March 1 a sworn statement showing the purposes for which its exempt property has been used during the preceding calendar year, § 801c. And the Commissioners are required to mail to each such owner, on or before February 1, notice of its contingent tax liability, § 801f, thus reminding it that within a month it must file its use report in order to retain its exemption.

The Congregational Home may be entitled, upon proper and timely showing, to exemption from the real property tax. As to that we express no opinion. Unfortunately it mistook its remedy. It relied at its peril upon the assurances of the Assessor. The appeal to the Board of Tax Appeals on March 3, 1952, was too late and should have been, as it was, dismissed.

Affirmed.