## TRUSTEES OF ST. PAUL METHODIST EPISCOPAL CHURCH SOUTH
### v.
### DISTRICT OF COLUMBIA.
### No. 11736.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 16, 1953.

Decided April 15, 1954.

Mr. Justin L. Edgerton, Washington, D. C., for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and George C. Updegraff, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Mr. Eugene E. Ditto, Washington, D. C., filed a brief on behalf of The Methodist Union of Washington, D. C., as amicus curiae, urging reversal.

Mr. Dickson R. Loos, Washington, D. C., filed a brief on behalf of The Washington Federation of Churches, as amicus curiae, urging reversal.

Before WILBUR K. MILLER, BAZELON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The petitioner, the Trustees of St. Paul Methodist Episcopal Church South, a body corporate, has long been the owner of two adjoining parcels of ground on which are located a church edifice and a parsonage. After its acquisition by the church in 1928, the property was classified each year as exempt from ad valorem taxation under the exemption statute,[1] until the assessing authorities of the District of Columbia included it in the list of equalized valuations of all taxable real estate which was approved by the Commissioners of the District prior to July 1, 1952. Thus the property was held to be subject to taxation for the fiscal year which began that day, and the Assessor mailed a tax bill to the church on August 28, 1952, for the then current fiscal year.

In addition to listing the St. Paul property for taxation for the year beginning July 1, 1952, an attempt was made to subject it to taxation retroactively for the years which began July 1, 1950, and 1951. Being of the opinion that the property had not been used after 1949 for purposes which would produce exemption, the Corporation Counsel on May 28, 1952, recommended to the Commissioners of the District that the church and parsonage "be restored to the tax list as of July 1, 1950." On June 5, 1952, the Commissioners entered an order pursuant to their counsel's recommendation[2] and, in obedience thereto, the Assessor on June 20, 1952, mailed to the church tax bills for the fiscal years which began July 1, 1950, and 1951.

On September 18, 1952, the St. Paul Church petitioned the District of Columbia Tax Court to set aside these actions and to hold its property exempt from taxation for the three fiscal years mentioned above. After a hearing, the Tax Court found that in 1949 the St. Paul congregation began to hold its services in a new church in nearby Maryland. About the same time the pastor abandoned the parsonage involved here and occupied a residence near the Maryland church. Since September 1, 1951, the old parsonage has been rented for use as a private residence.

The Court found the church edifice was not used for religious services after 1949 with these exceptions: (a) Services were held in the old church every

---

1. Sections 47–801a(m) and (o), D.C.Code 1951:

"The real property exempt from taxation in the District of Columbia shall be the following and none other:

\* \* \* \* \* \* \*

"(m) Churches, including buildings and structures reasonably necessary and usual in the performance of the activities of the church. A church building is one primarily and regularly used by its congregation for public religious worship.

\* \* \* \* \* \* \*

"(o) Pastoral residences actually occupied as such by the pastor, rector, minister, or rabbi of a church: *Provided,* That such pastoral residence be owned by the church or congregation for which said pastor, rector, minister, or rabbi officiates: *And provided further,* That not more than one such pastoral residence shall be so exempt for any one church or congregation."

2. As the property had never been on the tax list, the effect of the order was that it be added—not "restored"—to the tax list; that is, that it be assessed *nunc pro tunc.*

night during three weeks in November, 1950, and on every Sunday for three months, beginning August 3, 1951, but has not been used by the St. Paul congregation since October 28, 1951. (b) The church edifice was leased to Young Peoples Synagogue, Inc., for religious services held on September 30 and on four days in October, 1951. With those dates excluded, St. Paul leased the old church to Christ Temple Church on a month-to-month basis beginning September 1, 1951, at $250 per month, but reserved the right to use the building for religious services each Sunday from 10:45 a. m. to 12:30 p. m. (c) On November 1, 1951, the building was leased of one year to the First Church of the Nazarene for religious services at $300 per month, except that St. Paul reserved the right to hold services at times which would not conflict with those of the Nazarene. This arrangement was in effect when the Tax Court made its findings of fact January 16, 1953. The Tax Court held that the taxes for the three fiscal years involved were validly assessed. The church appeals.

■ The first question is whether the District Commissioners acted within their power in ordering on June 5, 1952, that the property be retroactively taxed for the years beginning July 1, 1950, and 1951. We find no statutory authority for retroactive assessment and taxation other than the Code provision—§ 47–712 —which deals with omitted property.[3] Unless the Commissioners' action of June 5, 1952, was authorized by that section, and was in exact compliance with it, the assessment and taxation of the church property for the first two fiscal years in question must be set aside as invalid. We said in Tumulty v. District of Columbia, 1939, 69 App.D.C. 390, 400, 102 F.2d 254, 264:

"A tax to be valid depends upon a particular statute creating liability and upon the proper procedural steps being taken by the taxing authorities. It is fundamental that an assessment must be validly made before tax liability can possibly accrue to the taxpayer. * * * "

There is a serious question whether realty which has been duly determined to be exempt may later be assessed as omitted property; for it was not overlooked by the authorities who made the original assessment of all taxable property, and was not omitted from that assessment through oversight or clerical error. We do not stop to consider the question, however, because we hold the Commissioners of the District had no authority to enter the order of June 5, 1952.

■ We held in Congregational Home of District of Columbia v. District of Columbia, 1953, 92 U.S.App.D.C. 73, 202 F.2d 808, that when the Commissioners of the District of Columbia have approved before July 1 the equalized valuations of realty subject to taxation which have been submitted to them, taxability has been finally determined, assessment has been completed, and the Commissioners have no further function except to

---

3. The pertinent portion of § 712 is as follows:

"If the board of assistant assessors shall learn that any property liable to taxation has been omitted from the assessment for any previous year or years, or has been so assessed that the assessment was void, it shall be their duty at once to reassess this property for each and every year for which it has escaped assessment and taxation, and report the same, through the assessor, to the collector of taxes who shall at once proceed to collect the taxes so in arrears as other taxes are collected: *Provided,* That no property which has escaped assessment and taxation shall be liable under this section for a period of more than three years prior to such assessment, except in the case of property involved in litigation. In addition to the duties of the assessor hereinbefore provided, it shall be the duty of the assessor upon reassessment as herein provided to notify the taxpayer by writing of the fact of such reassessment. Any person aggrieved by any reassessment made in pursuance of this section may, within ninety days after notice of said reassessment, appeal from said reassessment in the same manner and to the same extent as provided in sections 47–2403, 47–2404. * * * "

fix a tax rate which will raise the required revenue.

■■ It is also true that they have no function with respect to the procedure prescribed by § 712 for the retroactive assessment of omitted property. The only officials who have a duty in that process are the members of the Board of Assistant Assessors, who make the retroactive assessment, and the Assessor, who notifies the taxpayer of the assessment by sending him a tax bill. Within ninety days after such notice, the taxpayer may appeal to the Tax Court from the action of the Board of Assistant Assessors. That Board's assessment of omitted property is not required to be submitted to or to be approved by the Board of Equalization and Review or the Commissioners of the District, and is not subject to administrative review except in the Tax Court.

■ An assessment can be made only by an official or board designated by law to make it. An attempted assessment by any other person or board is void. Atchison, T. & S. F. Ry. Co. v. Elephant Butte Irr. Dist., 10 Cir., 1940, 110 F.2d 767, 773; 3 Cooley, Taxation (4th ed. 1924) § 1046. Section 712 authorizes only the Board of Assistant Assessors to assess omitted property. In this case that Board took no action whatever toward making a retroactive assessment. The Commissioners simply decided the property should have been taxed and presumably directed the Assessor to fix valuations, to compute the taxes, and to prepare and send tax bills. The result is the determination of taxability (the first step in assessment) [4] was made by the Commissioners instead of by the Board of Assistant Assessors, which alone was authorized to make it; and the determination of valuation (the second step in assessment) was made by the Assessor [5] instead of by the Board, which alone is authorized to make it. The property was valued by one man instead of by the six men charged with the duty of fixing value.

The action of the Commissioners and the Assessor in assessing the property was wholly unauthorized. For that reason, the judgment of the Tax Court as to the first two of the three fiscal years involved must be reversed.

■ With respect to the taxes for the fiscal year beginning July 1, 1952, we affirm the decision of the Tax Court. In that instance the property was included in the list of realty subject to taxation which was approved by the Commissioners before July 1. The Court correctly held the property was not exempt from taxation for that year under subsections (m) and (o) of § 801a. The church building had not been "primarily and regularly used by *its congregation* for public religious worship" during 1950

4. "* * * Broadly speaking," we said in the Congregational Home case [92 U.S. App.D.C. 73, 202 F.2d 810], "assessment results from two steps: (a) determining what parcels of real estate are subject to taxation, and (b) determining the equalized valuations of taxable real estate to which the tax rate, later determined, is to be applied."

5. The Tax Court made the following finding in connection with the valuation of exempt property:

"All real property in the District of Columbia, including that belonging to the United States, to the District of Columbia, to foreign embassies and other exempt institutions, has been valued and equalized by the Board of Equalization and Review under Section 47–709 of the D.C.Code, and such valuation and equal- ization has been approved each year, including the taxable years here involved, by the Commissioners of the District of Columbia, as provided in that section. * * *."

It may be, although it does not appear in the record, that in making retroactive valuations of the St. Paul realty as omitted property, the Assessor simply adopted the valuations to which the finding of fact above quoted referred. But the Board of Equalization and Review has no authority to value property for taxation. Its only function is to equalize the valuations theretofore made by the Board of Assistant Assessors. Sections 706 and 708. So, if in this case the Assessor adopted valuations theretofore made by the Board of Equalization and Review, he adopted valuations made by a board not authorized to make them.

and 1951.[6] (Emphasis supplied.) The pastoral residence had not actually been occupied as such by the pastor of the St. Paul Church since 1949.

Affirmed in part, reversed in part, and remanded to the Tax Court for entry of an order in accordance with this opinion.

---

6. The antecedent of the word "its" is the religious organization which owns the building. Thus Congress clearly said concurrence of ownership and use is essential to the exemption of a church building. In Catholic Home for Aged Ladies v. District of Columbia, 1947, 82 U.S.App.D.C. 195, 161 F.2d 901, we held such concurrence unnecessary to the exemption of buildings "which are used for purposes of public charity", under § 47–801a(h).

The decision is not applicable here because the language of subsection (h) differs from that of subsection (m) which we are now construing.

Whether our ruling in the Catholic Home opinion should be extended to church property, so that concurrence of ownership and use will not be a prerequisite of exemption, involves a question of policy for Congress, and not for us, to decide.