TRUSTEES OF the NINETEENTH STREET BAPTIST CHURCH of the District of Columbia, Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 11357.

District of Columbia Court of Appeals.

Submitted April 26, 1977.

Decided Sept. 30, 1977.

James Cobb, Washington, D. C., was on the brief for appellants.

John R. Risher, Jr., Corp. Counsel, Washington, D. C., with whom Henry E. Wixon and Richard G. Amato, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

Appellants' complaint against the District of Columbia disputing liability for assessed real estate taxes for fiscal year 1976 against previously exempt property was dismissed for lack of jurisdiction by the trial court because the limitations period of D.C.Code 1973, § 47–2403 (conjoined with § 47–801e) expired before the complaint was filed.[1] For the same reasons set forth by the court in its memorandum opinion, we affirm the dismissal.

---

1. D.C.Code 1973, § 47–2403 provides:

 Any person aggrieved by any assessment by the District of any personal-property, inheritance, estate, business-privilege, gross-receipts, gross-earnings, insurance premiums, or motor-vehicle-fuel tax or taxes, or penalties thereon, may within six months after payment of the tax together with penalties and interest assessed thereon, appeal from the assessment to the Superior Court of the District of Columbia. The mailing to the taxpayer of a statement of taxes due shall be considered notice of assessment with respect to the taxes. The court shall hear and determine all questions arising on appeal and shall make separate findings of fact and conclusions of law, and shall render its decision in writing. The court may affirm, cancel, reduce, or increase the assessment.

 The six-month period is calculated from the date the assessment notice is mailed, whether or not taxes are prepaid. *National Graduate University v. District of Columbia*, D.C.App., 346 A.2d 740, 741–42 (1975).

 D.C.Code 1973, § 47–801e provides:

 Any institution, organization, corporation, or association aggrieved by any assessment of real property deemed to be exempt from taxation under the provisions of sections 47–801a, 47–801b and 47–801c to 47–801f may appeal therefrom to the Superior Court of the District of Columbia in the same manner and to the same extent as provided in sections 47–2403 and 47–2404: *Provided, however*, That payment of the tax shall not be prerequisite to any such appeal.

Appellants purchased real property at 4606, 4608, and 4610 16th Street, N.W., from the Trustees of the Congregation and Talmud Torah B'Nai Israel on December 16, 1974. The Nineteenth Street Baptist Church had previously owned real estate at 19th and I Streets, N.W. Both properties had enjoyed identical tax exemption pursuant to D.C.Code 1973, § 47–801a:

The real property exempt from taxation in the District of Columbia shall be the following and none other:

\* \* \* \* \* \*

(m) Churches, including buildings and structures reasonably necessary and usual in the performance of the activities of the church. A church building is one primarily and regularly used by its congregation for public religious worship.

Appellants failed to give formal notice of the purchase to the Department of Finance and Revenue and no request for continued exemption was filed before the first day of the fiscal year after purchase; namely, July 1, 1975.[2] It is not clear from the record if or when the Nineteenth Street Baptist Church or the vendor filed the Annual Use Report with the Department as required by D.C.Code 1973, § 47–801c.[3] The property was assessed by the Department and it is agreed that tax bills were mailed August 27, 1975. On October 7, 1975, counsel wrote to the Department informing it of the real estate purchase and requesting a tax exemption. The Department inspected the property and granted the exempt status effective July 1, 1976, (*i. e.,* for fiscal year 1977) by letter dated December 23, 1975. Counsel wrote again to dispute liability for fiscal year 1976, and the Department responded, inartfully, on January 29, 1976, as follows:

In further response to your request for tax exemption of the above property, the action taken to place this property in an exempt status effective July 1, 1976 is consistent with the authority of the D. C. Mayor, (Commissioner) to grant such exemption.

Your attention is invited to *Congregation Home of District of Columbia v. District of Columbia* (1953, 92 U.S.App.D.C. 73, 202 F.2d 808).

I would also refer you to a U.S. Court of Appeals [sic] opinion rendered October 31, 1975 in *National Graduate University v. District of Columbia* further identified as Docket 9417. This letter reference is relevant to the issue of filing an appeal concerning the tax status of the property for fiscal year 1976.

This is to confirm Mr. Woodwells telephone conversation with you on this subject on January 22, 1976.

Appellants filed a petition protesting the assessment in Superior Court on March 18, 1976. The six-month period from the date of the mailing of the assessment terminated on February 27, 1976. After hearing argument on the District's subsequent motion to dismiss, the court filed a formal opinion granting the motion for lack of jurisdiction.

Appellants contend here that the six-month time limitation in which to file for judicial review of the exemption status, which is jurisdictional, should be waived in this case as it was in *Howard University v. District of Columbia,* Super.Ct.Tax Div., No. 2319, 104 Wash.D.L.Rep. 637 (April 16, 1976).

 The procedure for contesting a tax assessment of property the owner believes should be exempt is to file a petition with the Tax Division of Superior Court within six months of the date the notice of assessment was mailed. *National Graduate University v. District of Columbia,* D.C.App., 346 A.2d 740, 741–42 (1975). Failure to file

---

2. The regulations regarding exemption status are found in 21 DCRR No. 74–35 at 1643–1660, § 133 *et seq.* (1975). Appellants requested exemption in writing only after receipt of the tax bill. They had assumed that the exemption status would be transferred to the new realty automatically.

3. 21 DCRR No. 74–35 at 1659, § 136 sets forth the requirement that an annual report be filed by all holders of exemptions [with certain exceptions not here relevant] by March 1 describing uses of the property during the previous calendar year.

within six months has traditionally deprived the taxpayer of judicial review. *Workshop Center of the Arts v. District of Columbia,* D.C.Mun.App., 145 A.2d 571 (1958); *Jewish War Veterans v. District of Columbia,* 100 U.S.App.D.C. 223, 243 F.2d 646 (1957); *Congregational Home v. District of Columbia,* 92 U.S.App.D.C. 73, 202 F.2d 808 (1953). And judicial review is the sole remedy available to the taxpayer once the Department of Finance and Revenue has made an assessment, since the Department has no authority to retroactively alter that assessment and grant an exemption. *See Congregational Home v. District of Columbia, supra.*

Appellants' argument is superficially appealing, for they contend that the facts in their case are analogous to those in *Howard University, supra.* There, Howard University, an educational institution enjoying tax-exempt status by a specific Act of Congress (D.C.Code 1973, § 47–811), had acquired property from another tax-exempt educational institution run by the Sisters of the Holy Cross. Here, appellants, who are categorically exempt under D.C.Code 1973, § 47–801a(m), had also purchased property from another tax-exempt [religious] institution. Both Howard University and our appellants assumed there would be automatic transfer of exempt status covering the new real estate, and requested retroactive exemption by corresponding with the Department of Finance and Revenue during which period the limitations time for appeal expired. Appellants contend that the distinction in *Howard University* on the basis of the type of operative exemption for purposes of appellate procedure from assessment is erroneous. After analyzing the reasoning in *Howard University,* however, we conclude that the distinction drawn between necessary appellate procedures for a specifically-exempted property owner and a categorically-exempted property owner is

justified. Specifically-exempted parties such as Howard University are excused by regulation from the ordinary rule that a written application be made for exempt status. 21 DCRR No. 74–35 at 1658, § 134(a)(5). Any real estate acquired by such parties is considered to be exempt *ab initio* as well so long as it is used for educational purposes. This presumption justifies allowing such parties to *administratively* appeal disputed assessments before litigating in court. The usual six-month limitations period to petition the court is tolled for the duration of administrative consideration. On the other hand, categorically-exempt parties must file written application for each change in real estate ownership before the first day of the next fiscal year after purchase. After assessment, the Department of Finance and Revenue is presumed to have correctly levied the tax and cannot extinguish it after the fact by administrative fiat. *See Congregational Home v. District of Columbia, supra.*

We concur with the trial court's conclusion that while the equitable considerations in this case are strong they do not warrant a waiver of the limitations period which divests the Superior Court of jurisdiction in this case.[4] Accordingly, the order dismissing the case for lack of jurisdiction is

*Affirmed.*

PAIR, Associate Judge, Retired, dissenting:

The sole question on this appeal is whether the Tax Division of the Superior Court had jurisdiction of this tax dispute. Because in my opinion no valid tax has been assessed in this case, I would reverse and remand with direction to proceed to disposition on the merits.

The facts are not in dispute and a short statement should be sufficient to put this

---

**4.** We nevertheless underscore the court's remarks concerning the inartful manner in which the District Department of Finance and Revenue communicated with counsel about (1) the Department's lack of power to correct a wrongful assessment once the process of assessment was completed for the fiscal year, and (2) the need to pursue timely certain appellate procedures. We trust that the District will insure that future notices from the Department of Finance and Revenue will be intelligible and informative.

dissent in perspective. Appellant (the church) carried on its religious activity for many years in tax exempt real property at 19th and Eye Streets, N.W. in the District of Columbia.[1] In December 1974, the church sold the 19th and Eye Streets property and purchased from another religious society, its tax exempt real property at 4606, 4608 and 4610–16th Street, N.W. The church continued its religious activity in the 16th Street real property. There is neither a record showing nor a present contention by the District that the church has, since the purchase, used the property for any other purpose.

On August 27, 1975, the District mailed to the church an undated tax bill in the amount of $23,535.54 plus penalties purporting to represent taxes assessed against the 16th Street property for fiscal year 1976. The church, in October 1975, requested administrative review of the tax billing and the continuance of the exempt status thereto given its real property. A further exchange of written communications followed, ending on January 29, 1976, with the communication from the taxing authority, quoted at page 4 of the majority opinion. On March 18, 1976, the church filed its petition challenging the real property tax and the trial court dismissed the petition, ruling that it was not filed within six months after August 27, 1975, when the District mailed the undated tax bill.

Because the real property of the church was recognized as exempt from taxation immediately prior to the commencement of fiscal year 1976, there could be no valid assessment of such property for purposes of taxation except as provided in D.C.Code 1973, § 47–710.[2] It is there provided:

Annually, on or prior to July 1 of each year, the Board of Assistant Assessors, shall make a list of all real estate *which shall have become subject to taxation and which is not then on the tax list,* and

affix a value thereon, according to the rules prescribed by law for assessing real estate . . . .. (Emphasis supplied.)

It necessarily follows, therefore, that an appeal from any such assessment would not be controlled by D.C.Code 1973, § 47–801e, but rather by D.C.Code 1977 Supp., § 47–2405(2), which reads:

Any person aggrieved by any assessment or valuation made in pursuance of section 47–710, may, *within six months after October 15 of the year in which said valuation or assessment is made, appeal from such assessment or valuation* in the same manner and to the same extent as provided in sections 47–2403 and 47–2404: *Provided, however,* That if the taxpayer shall be notified in writing not later than September 1 of a particular year of the valuation of the real estate valued in accordance with section 47–710, such taxpayer shall first make a complaint to the Board of Equalization and Review respecting such assessment as herein provided. (Emphasis supplied.)

Although the church did not complain to the Board of Equalization and Review, it did complain to the taxing authority upon receipt of the tax bill and did petition the Tax Division for relief within six months after October 15, 1975. Consequently, if an assessment was made pursuant to D.C.Code 1973, § 47–710, the appeal was timely.

It is true, of course, that there is no record showing that the church was given notice of an assessment pursuant to D.C. Code 1973, § 47–710. However, the simple fact is that aside from the undated tax bill there is no record showing that the church was given notice of an assessment pursuant to any other provision of law.

The Congress has carefully structured procedures for the assessment and taxation of real property in the District of Columbia. In the statutory scheme, provision is made

1. It is a matter of historical fact, of which the court can take judicial notice, that the church, founded in 1839, is one of the oldest religious congregations in the District of Columbia. It is apparently conceded by the District that prior to fiscal year 1976, the real property of the

church was recognized as exempt from taxation.

2. *Cf. George Hyman Const. Co. v. District of Columbia,* D.C.App., 315 A.2d 175, 178 (1974).

for notice to the property owner at every stage of the assessment procedure and at its completion. *See* D.C.Code 1977 Supp., §§ 47–645, –646. Here, for example, there is not even pretense by the District that "[b]eginning . . . after January 1, [1975] but no later than March 1 [1975]" it gave the church notice that its 16th Street real property had been assessed for taxation for fiscal year 1976, as would have been required by D.C.Code 1977 Supp., § 47–645.[3] Assuming, however that there was an assessment, the church, being uninformed of appeal rights, conferred by D.C. Code 1977 Supp., § 47–646(e), (i), was unable to exercise any such rights.

The majority say that the church failed to give the District formal notice of the purchase of the 16th Street property and made no request for continued exemption before the first day of fiscal year 1976. I have searched, but found no statute or regulation which required the church to give the District notice of what it knew of its own knowledge.[4] All the church was required to do was to file on or before March 1 of 1975, a report ". . . stating under oath the purpose for which the exempt property has been used during the preceding calendar year." 21 DCRR No. 74–35, § 136(a).[5]

But assuming again that the church failed to file the Annual Report, the consequence could have been no greater than that prescribed by 21 DCRR No. 74–35, § 138,[6] which provides:

(a) If the report required to be filed by subsection (a) of section 136 is not filed within the time provided therefor . . the property affected shall immediately be assessed and taxed *but the tax assessed under this section shall be for a minimum period of thirty (30) days.*

(b) A tax bill shall be mailed to the owner for each month . . . the report remains unfiled . . . . (Emphasis supplied.)

With respect to the failure of the church to apply for exemption before the commencement of fiscal year 1976, it seems enough to say that the Congress and not the District is the exempting authority. D.C.Code 1973, § 47–801a provides in crystal clear language that:

The real property exempt from taxation in the District of Columbia shall be the following and none other:

\* \* \* \* \* \*

(m) Churches, including buildings and structures reasonably necessary and usual in the performance of the activities of the church. A church building is one primarily and regularly used by its congregation for public religious worship.

Unquestionably, the District has been satisfied for many years that the institution here involved is a church and that prior to fiscal year 1976, its property was used for religious purposes and was for that reason exempt from taxation. Consequently, the sole function of the District was to determine whether the 16th Street property was, following its purchase, used for religious purposes. Thus, it simply defies reason to say that the church was nevertheless required to apply for exemption of the 16th Street property. *See District of Columbia v. Maryland Synod of the Lutheran Church,* D.C.App., 307 A.2d 735 (1973); *District of Columbia v. Chevrah Tifereth Israel,* 108 U.S.App.D.C. 53, 280 F.2d 61 (1960); *District of Columbia v. Salvation Army,* 105 U.S.App.D.C. 85, 264 F.2d 371 (1959); *Trus-*

---

**3.** No doubt the reason was that such property, pursuant to 21 DCRR No. 74–35, § 135(a), was exempt from taxation until June 30, 1975, the end of fiscal year 1975.

**4.** It is common knowledge that every land transaction becomes a matter of public record *in the office* of the taxing authority within 24 hours after recordation of the deed.

**5.** The majority say: "It is not clear from the record if or when the . . . Church or the vendor filed the Annual Use Report . . . as required by D.C.Code 1973, § 47–801c."

**6.** The church was hardly in a position to state under oath the purpose for which the 16th Street property was used "during the preceding calendar year," since it was not then the owner. It could only assume that it was used for religious purposes.

*tees of St. Paul M.E. Church South v. District of Columbia,* 94 U.S.App.D.C. 78, 212 F.2d 244 (1954); *Catholic Home v. District of Columbia,* 82 U.S.App.D.C. 195, 161 F.2d 901 (1947); *Calvary Baptist Church Extension Ass'n v. District of Columbia,* 81 U.S. App.D.C. 330, 158 F.2d 327 (1946). *See also Howard University v. District of Columbia,* Super.Ct.Tax Div., No. 2319, 104 Wash.D.L. Rep. 637 (April 16, 1976, which I would regard as dispositive, in any event.

The majority say on the authority of *National Graduate University v. District of Columbia,* D.C.App., 346 A.2d 740, 741–42 (1975), and *Congregational Home v. District of Columbia,* 92 U.S.App.D.C. 73, 202 F.2d 808 (1953), that once the assessment was made the church was required at its peril to seek judicial review as provided in D.C.Code 1973, § 47–801e.[7] The short answer to this is that, aside from the undated tax bill, there is no record of any assessment. In any event, § 47–801e contemplates a valid assessment and, as pointed out above, on this record, a valid assessment could only have been made pursuant to D.C.Code 1973, § 47–710.

The inescapable fact is that the church was not, for purposes of D.C.Code 1973, § 47–801e, an institution "aggrieved by any assessment of real property deemed to be exempt" as in *National Graduate University* and *Congregational Home.* Rather, the church was an institution aggrieved by the wrongful taxation of its real property, declared by Congress to be exempt, and until fiscal year 1976, recognized by the District

as exempt. The result which should follow from all this was spelled out by the Supreme Court in *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498 at 509, 52 S.Ct. 260 at 263, 76 L.Ed. 422 (1932), where is was said:

> [W]here complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. (Citations omitted.)

*See also District of Columbia v. Green,* D.C. App., 310 A.2d 848, 852 (1973); *Tumulty v. District of Columbia,* 69 App.D.C. 390, 399–400, 102 F.2d 254, 263–64 (1939).

What this case comes down to then is an amazingly crass attempt to tax, without prior notice of assessment,[8] the property of this particular church. The instrument employed was an undated tax bill conveniently mailed after the commencement of fiscal year 1976, and shortly before the District recognized the property as exempt for fiscal 1977. My associates would sanction this sorry enterprise. I refuse to join them and therefore dissent.

**7.** Significantly enough, the real property involved in each of the cases cited by the majority as controlling had previously been assessed as taxable, and in each case what was sought was a change from a taxable to an exempt status. Moreover, in each case the request was made after the property had been validly assessed as taxable. *Nat'l Graduate University v. District of Columbia, supra; Congregational Home v. District of Columbia, supra.*

**8.** Unless the property of this church was assessed pursuant to D.C.Code 1973, § 47–710, quoted above, it is required by D.C.Code 1977 Supp., § 47–645, that:

> Beginning as soon as possible after January 1, but no later than March 1 of each year, each taxpayer shall be notified of the assessment of

his real property for the next fiscal year. The notice, or statement accompanying the notice, shall include—

\* \* \* \* \* \*

(2) the assessed value of the land and improvements (shown separately and in total) of the property for the next fiscal year and such amounts for the previous fiscal year;

(3) the amount and percentage of change in assessed value over the previous fiscal year;

(4) an indication of the reason for such change in assessment, such as, but not limited to, improvements to the property, zoning change, changing market value;

(5) statement of appeal procedures pursuant to section 47–646(i); . . . . .