The SISTERS OF the GOOD SHEPHERD OF the CITY OF WASHINGTON, D.C., the Selma M. Levine School of Music, Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 97–TX–827.

District of Columbia Court of Appeals.

Argued Sept. 8, 1998.
Decided Feb. 10, 2000.

Charles E. Graf with whom John W. Nields, Jr., Washington, DC, was on the brief, for appellants.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and KING, Senior Judge.[*]

WAGNER, Chief Judge:

Appellants, The Sisters of the Good Shepherd of the City of Washington, D.C. (Good Shepherd) and the Selma M. Levine School of Music (Levine School), both non-profit organizations, appeal from a decision of the trial court denying a tax exemption for real property owned by Good Shepherd and leased to the Levine School. The principal issue presented for review is whether the subject real property qualifies for tax exemption under D.C.Code § 47–1002(10) (1997 Repl.), which exempts from taxation "[b]uildings belonging to and operated by schools ..." where the property is operated by a non-profit school, but owned by a different type of non-profit entity. Also presented for review is whether the property is exempt under D.C.Code § 47–1002(8), which exempts property of a non-profit entity which is "used for purposes of public charity principally in the District of Columbia." The trial court concluded that the District of Columbia's Department of Finance and Revenue (DFR) reasonably interpreted D.C.Code § 47–1002(10) to require concurrence of ownership and use by the same type of non-profit entity in order to qualify for exemption. The court also rejected the alternative request for exemption under D.C.Code § 47–1002(8) on the grounds that § 1002(8) is a general exemption provision, and only the more "specific" provision of § 1002(10) could apply. We conclude that the real property qualifies for the exemption under D.C.Code § 47–1002(10) and reverse.

## I.

The facts are not in dispute. Good Shepherd is a religious order, incorporated as a non-profit organization in the District, which owns the real property involved in this litigation.[1] Good Shepherd operates residential treatment centers for women and children to address their medical and psychological needs. Since 1984, Good Shepherd has rented a part of its property to the Levine School. The Levine School is also a District of Columbia non-profit corporation. It is a community-based school which provides musical education, including training to qualified students regardless of their ability to pay. The Levine School is funded by tuition and charitable contributions.

During the tax years at issue here (1993–1995), Good Shepherd has leased the subject property, located at 1690—36th Street, N.W., to the Levine School for an annual rental amount. The lease for the property provides that the Levine School may use the property for a "music school and related services and for no other purpose whatsoever, including residential use, without the prior written consent of the landlord." The lease provides for Good Shepherd to pay the real property taxes

[*] Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.

1. The real property is described as Lot 14 in Square 1304 improved by the premises known as 1690—36th Street, N.W., in the District of Columbia. A portion of the property is used as a convent, and that portion is exempt from taxation and not involved in this litigation.

and for the Levine School to reimburse Good Shepherd for any real estate taxes assessed for the property. Good Shepherd has paid all of the tax assessments at issue in this case, and the Levine School has reimbursed Good Shepherd as required by the lease.

In 1992, Good Shepherd applied for an exemption from property taxes for the Levine School under D.C.Code §§ 47–1002(8) and (10) and other statutory provisions which are not at issue in this appeal. The District's DFR denied the request, concluding that: (1) subsection (10) was inapplicable to exempt the property because the school did not own it; and (2) the property did not qualify for any other exemption because its use as a school meant that "the use requirements of other subsection[s] have not been met."

The parties filed cross-motions for summary judgment in the trial court. In granting the District's motion, the trial court concluded that D.C.Code § 47–1002(10) is a "specific" provision which addresses tax exemptions for school property, while § 47–1002(8) is a more general provision, applying to charitable institutions. Therefore, the court analyzed the question of the exemption under § 1002(10). Finding the language of § 1002(10) to be ambiguous, the court deferred to the agency's interpretation, concluding that it was reasonable and consistent with the statutory language and the legislative history of the statute. Thus, it denied the exemption because the Levine School, which was using the property as a school was not the owner of the property for which the exemption was sought. Specifically, the trial court explained that:

the property is owned and operated by two different types of nonprofit entities. Good Shepherd is a nonprofit religious organization. Levine School is a nonprofit music school. Each entity is guided by different subsections of the exemption statute. There is no question that if the property was owned and operated by Levine School, that the prop-

erty would be exempt. The same would be true if Good Shepherd were a nonprofit school, college or university, that recognized the generally recognized relationship of teacher and student.... [T]he Court concludes that the DFR was reasonable in interpreting that concurrence of ownership and use by the same type of entity is required to obtain exempt status under § 47–1002(10).

## II.

Appellants argue that the trial court erred in determining that D.C.Code § 47–1002(10) requires that the same type of non-profit entity both own and operate the property in order to qualify for the property tax exemption. They contend that the property is tax-exempt under § 1002(10) because it is owned by a non-profit religious organization and operated by a non-profit school. They take the position that the statutory language does not compel the interpretation that concurrent ownership and operation by the same type of non-profit entities are required for exemption and that such an interpretation is unreasonable.

Section 47–1002(10) exempts from taxation real property consisting of:

[b]uildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student[.]

The trial court concluded that this section of the statute is ambiguous insofar as whether it exempts from taxation property belonging to schools and property operated by schools or whether it exempts only property that is both owned and operated by schools. The District argues first that the statute is unambiguous and clearly requires concurrent ownership and operation by non-profit schools, colleges, or universities. In support of its argument, it points to the use of the conjunctive instead of the disjunctive "or" in the statute.

We agree with appellant that the statutory language is ambiguous in that it does not resolve definitively by its plain language that concurrent ownership and use by a school is required for exemption under this section of the statute. The word "and" may be used to join a list of different types of property which may be entitled to the exemption, for example, property belonging to schools and property operated by schools. We have had occasion to read "and" as "or" in interpreting a statute to avoid an absurd result and "to follow the legislative intent despite an ill chosen word." *Mulky v. United States,* 451 A.2d 855, 857 (D.C.1982).[2] Interpreting similar tax exemption language, the Court of Appeals rejected the argument that concurrence of use and ownership in the same tax exempt entity was required. *See Catholic Home for Aged Ladies v. District of Columbia,* 82 U.S.App.D.C. 195, 161 F.2d 901 (1947). The statute at issue in *Catholic Home* exempted from taxation "buildings belonging to and operated by institutions which are not operated for private gain, which are used for purposes of public charity principally in the District of Columbia." 82 U.S.App. D.C. at 196, 161 F.2d at 902. The building in question belonged to one charitable corporation and was operated by an auxiliary charity. *Id.* The District took a position similar to the one it takes in this case, *i.e.,* that the exemption would only apply where there was a concurrence of ownership and operation in one institution. *Id.* The Court of Appeals did not read the "belonging to and operated by" language in the conjunctive, but rather determined that "[a] more logical construction is that there must be use by a charitable organization and ownership by a charitable organization." *Id.* While the present case presents a slightly different issue, *Catholic Home* is instructive, nevertheless, in suggesting that the "belonging to and operated by" language is not so unambiguous that the conjunctive interpretation is clear and therefore, conclusive.

The District argues that this court and its predecessor have rejected the disjunctive reading of this section in *District of Columbia v. Catholic Univ. of America,* 397 A.2d 915 (D.C.1979) and *Howard Univ. v. District of Columbia,* 81 U.S.App. D.C. 40, 155 F.2d 10, *cert. denied,* 329 U.S. 739, 67 S.Ct. 53, 91 L.Ed. 638 (1946). Identical statutory language was under review in *Catholic University.* There, the question was whether a concurrence of use and ownership of the property was required for the exemption. *Catholic Univ.,* 397 A.2d at 918. The court determined that a regulation which required concurrence of ownership and use by the organization seeking the exemption under D.C.Code § 47–801(a)(j) [3] (pertaining to exemptions for buildings "belonging to and operated by schools, colleges, or universities") to be inconsistent with the statutory language as interpreted by the court in *Catholic Home, supra,* and *Trustees of St. Paul Methodist Episcopal Church South v. District of Columbia,* 94 U.S.App.D.C. 78,

**2.** At issue in *Mulky* was the scope of the trial court's discretion in sentencing a defendant upon revocation of probation where the statute read that upon revocation, the court was to "impose a sentence *and* require [the probationer] to serve the sentence or pay the fine originally imposed, or both[.]" *Mulky,* 451 A.2d at 856 (citing D.C.Code § 24–104 (1973) (emphasis added)). The literal language of the statute permitted the court to impose a sentence and require the defendant to serve the original sentence. *Id.* at 857. The government argued that the trial court was obligated to impose the original sentence upon revocation of probation based upon the lan-

guage of the statute. *Id.* at 856. To effectuate the legislative purpose and preserve the Act's constitutionality, this court read "and" for "or," concluding that "[t]he legislative history belie[d] any such intent, and, in any event, imposition of a new sentence in addition to the old would result in double jeopardy." *Id.* at 857 (citation and footnote omitted).

**3.** D.C.Code § 47–801(a)(j) is identical to D.C.Code § 47–1002(10), the statutory provision under consideration in this case.

83 n. 6, 212 F.2d 244, 249 n. 6 (1954).[4] *Catholic University* does not reject the disjunctive reading of this section, although it mentions that the conjunctive interpretation under the regulation would not be "necessarily inconsistent with the statute." 397 A.2d at 919. A portion of the property was held not to be exempt in *Catholic University* not because Catholic University was not the sole owner and user, but because it had rented a portion of the property to a profit-making entity. *Id.* at 917, 922. The portion of the property leased by Catholic University to another non-profit school was held to be tax exempt, while the portion leased to a profit-making entity was disqualified for the exemption. *Id.* Thus, *Catholic University* does not support the proposition that the court has rejected the disjunctive reading of subsection (10).

Nor does *Howard University, supra,* support the District's argument. The issue in *Howard University* was not a general school exemption, but a special statute which exempted the property of Howard University provided it was "used only for the purposes set forth in the charter," specifically, "the education of youth in the liberal arts and sciences." *Howard Univ.,* 81 U.S.App.D.C. at 40, 155 F.2d at 10.

In summary, the meaning of § 47–1002(10) is not clear with reference only to its language. The courts have found the evident ambiguity in the language, and therefore, resorted to the legislative history and rules of statutory construction to ascertain its meaning and to effectuate its purpose. Considering the legislative histo-

ry of the statute, the court has rejected the requirement of reading the statute in the conjunctive and requiring concurrence of use and ownership in the same non-profit school entity to qualify for the exemption under D.C.Code § 47–1002(10).[5]

■■. However, the question not previously resolved in this jurisdiction is whether the exemption is available under § 47–1002(10) when the property is operated by a non-profit school, but owned by a non-profit religious order. The District concedes that if the Levine School leased the property from another non-profit school, or if Good Shepherd leased its property to another religious entity, each would qualify for real property tax exemption under different sections of the Code.[6] The District denied the exemption on the theory that Good Shepherd and the Levine School are different types of non-profits. The question is whether they lose the benefit of the statutory exemption which would otherwise be available because they lease to or from different types of charitable organizations rather than the same type of non-profit. Such an interpretation would be an anomaly and contrary to the legislative intent to permit non-profit charitable organizations, schools, and religious groups to operate in the District of Columbia without the burden of taxation.

In *Catholic Home, supra,* the court outlined the legislative history of the exemption statute which reflects its legislative purpose.

> The bill embraces 4 classes of property which would be exempt under its

---

**4.** Both of these cases were binding on the court under *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

**5.** In recognizing that the word "and" may be interpreted in the disjunctive, we do not mean to suggest that an entity can qualify for tax exemption simply by meeting either prong of the particular exemption provision. For example, there could be no exemption under § 47–1002(10) where a profit-making entity owns the property, but leases it to a qualifying school not organized or operated for private gain. On the contrary, as will be discussed

*infra,* to qualify for the exemption under discussion, both entities must come within the classes of property intended for exemption under § 47–1002, even if not the identical provision.

**6.** It is undisputed that the Levine School is a non-profit school within the meaning of D.C.Code § 47–1002(10) and that Good Shepherd is a non-profit religious and charitable organization within the meaning of D.C.Code §§ 47–1002(8) and (14).

terms—property which is devoted to education, with respect to which no profit inures; property which is devoted to religious purposes, with respect to which no profit inures; property devoted to charity, with respect to which no profit inures; and property which is devoted to science.

82 U.S.App.D.C. at 195–96, 161 F.2d at 901–02 (quoting 88 Cong. Rec. 9485 (1942)). The reference to the legislative history continues:

This bill defines privately owned non-profit institutions which, because of their religious, charitable, education, and scientific activities in the District, should be permitted to operate without the burden of taxation. The bill seeks to exclude from tax-exempt status those institutions which claim to perform this type of work, but are organized and operated for private profit and gain in contrast to those which derive no profit or gain from their operation.

*Id.* (quoting H.R. REP. No. 2635 at 1, 77th Cong., 2d Sess. (1942); S. REP. No. 1634, 77th Cong., 2d Sess. at 1–2.) The House and Senate Reports also note that "it is the unanimous opinion that where the relationship of teacher and student exists, the property of schools, colleges, or universities not organized or operated for private gain should be exempt from taxation." H.R. REP. No. 2635, at 3; S. REP. No. 1634, at 3. The legislative history of the tax exemption statute indicates that it was the intent of Congress that the tax exempt status of property depend upon the use of the property and whether it is operated for private profit or gain. To deny the exemption because the property, which is operated by a non-profit school, is owned by a non-profit religious order would contravene the legislative intent to exempt from taxation all "property which is devoted to education with respect to which no profit inures." 88 Cong. Rec. 9485 (1942) (remarks of Sen. McCarran). Subsection

(10) premises the tax exemption on the character of the entities owning or operating the property. Either the owner or the user must be a school, college or university which is "not organized for private gain and embrace the generally recognized relationship of teacher and student," and neither the owner or operator may be a for-profit entity. There is nothing in the legislative history which would show that Congress intended to deny a tax exemption where the property is both owned and used by the types of entities exempt from taxation under the statute simply because the owner and user would qualify ordinarily under different sections of the statute.

■ The District argues that because tax exemptions should be strictly construed against the property owner who claims the exemption, any ambiguity should be resolved in favor of the government. *See, e.g., National Med. Ass'n v. District of Columbia,* 611 A.2d 53, 55 (D.C. 1992). It also contends that the court should defer to the reasonable interpretation of the statute by the agency responsible for its enforcement. "We defer to an agency's interpretation of a statute or regulations it is responsible for enforcing as long as the interpretation is not plainly wrong or inconsistent with the legislature's intent." *Downs v. Police & Firefighters Retirement & Relief Bd.,* 666 A.2d 860, 861 (D.C.1995) (citations omitted); *Catholic Univ., supra,* 397 A.2d at 919 (citations omitted). We are persuaded that the District's interpretation is contrary to the legislative intent as reflected in the legislative history. For the same reason, we reject the District's argument that strict construction requires interpretation of the statute in the District's favor.[7]

For the foregoing reasons, the decision of the trial court is reversed and remanded with instructions to enter judgment in favor of appellants and granting the exemption under D.C.Code § 47–1002(10).

*Reversed* and *remanded.*

---

7. In light of our disposition, we need not resolve appellants' argument that the property is exempt based on its use for purposes of public charity under D.C.Code § 47–1002(8).

KING, Senior Judge, dissenting.

The majority holds that a statute which provides for a property tax exemption for "[b]uildings belonging to *and* operated by [eligible [1]] schools" applies to a building "operated" by such a school, but which "belongs" to a charitable institution that is not a school. D.C.Code § 47–1002(10) (1997 Repl.) ("exemption 10"). Because that interpretation impermissibly amends the statute by substituting the word "or" for the word "and" as italicized above, I dissent.

The facts are as set forth by the majority and are not in dispute. The owner of the real property in question is a religious order, The Sisters of the Good Shepherd of the City of Washington, D.C. ("Sisters"), incorporated as a non-profit corporation. It is agreed that the Sisters are *not* a school within the meaning of exemption 10. Sisters uses part of the property in question as a convent; that portion of the property is not taxed—presumably pursuant to another exemption in § 47–1002 [2]— and is not part of this litigation.

The remainder of the property is leased to the Selma M. Levine School of Music ("Levine School"), which is also a D.C. non-profit corporation whose charter allows it to provide musical education to students of all ages. It is not disputed that the Levine School *is* a school within the meaning of exemption 10. The lease for the tenancy, which began in 1984, provides that the Sisters will pay the real estate taxes and the Levine School will reimburse the Sisters for the taxes paid. The record reflects that since 1984, the taxes have been paid as provided for in the lease.

In 1992, the Sisters and the Levine School applied for an exemption under § 47–1002(8) (exemption 8), (exemption 10), and other provisions that are not at issue in this appeal. The District of Columbia Department of Finance and Revenue ("DFR") denied the request. With respect to exemption 10, DFR interpreted the language conferring the exemption—property "belonging to and operated by schools"—to require that both the owner *and* the operator of the property be an eligible school as defined by the statute. Because the owner, in this case the Sisters, was not a school, the exemption provision did not apply and the application was denied.

Thereafter, the Sisters and the Levine School filed a timely petition in the Superior Court of the District of Columbia, Tax Division, appealing the denial of the exemption request by DFR, and seeking a refund for taxes paid for tax years 1993–95. Petitioners argued that the exemption applies if either the owner *or* the operator of the property is an eligible school. On cross-motions for summary judgment, the trial court denied the petition and this appeal followed. The trial court rejected the application of exemption 8, because it was a general provision, in favor of exemption 10 which is a specific provision. *See, e.g., District of Columbia v. Linda Pollin Mem. Hous. Corp.,* 313 A.2d 579, 583 (D.C. 1974) ("Where ... general provisions ... in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control, as a clearer and more definite expression of the legislative will.").

With respect to exemption 10, the trial court recognized at the outset the "firmly established [principle] in the jurisprudence relating to the District's real property tax that exemptions from taxation are to be construed strictly against the party claiming the exemption." *National Med. Ass'n*

---

1. Section 47–1002(10) defines eligible schools as those which are "not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student ...."

2. The majority says that the Sisters are a non-profit charitable and religious organization within the meaning of exemptions 8 and 14. D.C.Code § 47–1002(8), (14). *Ante* at 314 n.6.

*v. District of Columbia,* 611 A.2d 53, 55 (D.C.1992). The court concluded, however, that the provision was ambiguous because, as Sisters argued, it could not readily be determined "whether it exempts both property belonging to schools and property operated by schools, or whether it only exempts property that is *both* owned *and* operated by schools."[3] In resolving the ambiguity in favor of the latter formulation (property must both belong to and be operated by an eligible school), the trial court deferred to DFR's interpretation citing the rule that, in the taxation context, "courts . . . defer to reasonable administrative understandings of uncertain legislative commands, and if the Mayor's interpretation of equivocal statutory language is 'reasonable' we will accept it." *District of Columbia v. Casino Assocs.,* 684 A.2d 322, 325 (D.C.1996). Because, in its view, the administrative interpretation was reasonable and was not contravened by case law, any other provision in the legislation itself, or the legislative history, the trial court upheld it.

The majority agrees with the trial court's assessment that the provision is ambiguous. The majority has concluded, however, that there was nothing in the legislative history to show that Congress intended "to deny a tax exemption" in the circumstances presented here. *Ante* at 315. In addition, the majority rejects the District's reliance on both the principle that exemptions be strictly construed against the taxpayer, and the principle that deference is usually accorded the interpretation of the agency responsible for enforcing it, on the ground that the District's interpretation is contrary to the legislative intent as reflected in the legislative history. With respect, I disagree with the majority on both of its conclusions. In my view, once interpreting case law is taken into account, there is no ambiguity. But, even if there is sufficient uncertainty concerning the meaning of the provision to allow for the use of extrinsic interpretive

tools, which I do not concede, the legislative history is far too general to establish the points attributed to it by the majority. In sum, the effect of the majority's interpretation is to amend the statute by replacing the word "and" with the word "or" in the controlling statute. There is nothing in the legislative history to support such an amendment of the statute.

Before turning to a discussion of the reasoning underlying my disagreement with the majority, it will be helpful to describe, in some detail, the holdings of the only case of this court interpreting exemption 10. *See District of Columbia v. Catholic Univ.,* 397 A.2d 915 (D.C.1979). That case involved the taxation of two separate properties belonging to Catholic University, an eligible school under exemption 10. One of the properties had at one time been leased to the Campus School, which the court described as a nonprofit educational institution. The court does not specify whether that school qualified as an eligible school under exemption 10, but the school apparently did so qualify. The campus School left the premises in the tax year in question and the building thereafter remained empty. About ⅙ of the property was used by Catholic University for storage space, but the rest of the building, configured as classrooms, was unused. This court held that the use of a portion of the building as storage and the non-use of the remainder, under the circumstances, constituted sufficient use of the premises by Catholic University to make it both an owner and operator and, therefore, entitled to the exemption.

The other property had different arrangements and the resolution of the competing contentions presented by those arrangements has considerable significance with respect to the issue presented in this case. This other property had two tenants: Gallaudet College, an exemption 10 eligible school, and the American Language Academy, which was not an eligible

3. Record at 215–16.

school because it was a profit-making entity. The District was of the view that the portion of the building occupied by Gallaudet was subject to the tax because, even though both the owner and the operator were eligible schools, the statute requires that both the owner and operator be the same entity. The trial court rejected that argument and this court agreed on appeal.[4] *Id.* at 922.

In summary, in *Catholic Univ.*, this court held that so long as both the owner and the user of the property are eligible schools, the exemption applies. In addition, the trial court held that the exemption does not apply if the user is a school which is not an eligible school, even if the owner is an eligible school. This court did not resolve that issue, but the trial court's interpretation is plainly correct. See note 4, *supra*. When we put the two holdings together, the meaning of the statute is clear: in order to qualify for the exemption, the property must both be owned *and* operated by an eligible school; it is not enough that an eligible school own *or* operate.

To repeat, the governing statute provides for an exemption from taxation for

Buildings belonging to and operated by schools, colleges, ·or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student[.]

D.C.Code § 47–1002(10) (1997 Repl.). The majority begins its analysis by concluding that the statute is ambiguous because it "does not resolve definitively by its plain language that concurrent ownership and use by a school is required . . . ." *Ante* at 313. Ultimately the majority concludes that this provision can be read to permit the exemption where, as here, the property is owned by a charitable entity that is not an eligible school so long as the property is operated by an eligible school. In short, says the majority, the statute covers "[b]uildings belonging to *or* operated by schools . . . ." (Emphasis supplied.)

I begin my analysis with the observation that the majority's interpretation rests on the faulty premise that the statute is ambiguous.[5] By definition we are speaking of "ambiguousness in meaning arising from language admitting of more than one interpretation." Webster's Unabridged Dictionary (2d ed.1948); *Rastall v. CSX Transp.*, 697 A.2d 46, 51 (D.C.1997); *Laskaris v.. City of Wisconsin Dells*, 131 Wis.2d 525, 389 N.W.2d 67, 70 (App.1986). In short there must be two or more plausible readings of the statute, including the one being asserted, in order for the language to be ambiguous. *Wood v. Hatcher*, 199 Kan. 238, 428 P.2d 799, 803 (1967). Certainly this statute can reasonably be read to apply where both the owner and user are eligible schools. Try as I may, I cannot, without changing the language (*e.g.*, the "and" to an "or"), discern how it can be read to apply, as the majority holds, where

---

**4.** The trial court also ruled that the portion of the building occupied by the American Language Academy was subject to the tax because the user was not an eligible school. That portion of the trial court ruling was not cross-appealed by the tax payer; therefore, that issue was not before this court. The majority is in error when it says that the ruling was a holding of this court. *Ante* at 313.

Even though this court did not formally hold that the exemption is not available where the owner is eligible and the operator is not, it is evident that no other interpretation would be permissible or reasonable. The same could be said where the owner is not eligible

and the operator is. *See State ex rel Hammer v. MacGurn*, [187 Mo. 238,] 86 S.W. 138, 139 (Mo.1905) (property exempt from taxation only if the private owner "allows his land to be used for . . . [exempt] purposes, . . . and derives no personal benefit"); *accord, Warden Plaza v. Board of Review of the City of Fort Dodge, Iowa*, 379 N.W.2d 362, 365–66 (Iowa 1985); *Sisters of Providence v. Municipality of Anchorage*, 672 P.2d 446, 450–51 (Ala[ska].1983).

**5.** The only ambiguity in the statute was resolved by this court in *Catholic Univ.*, where we held that the exemption applies if the owner is an eligible school and the user is a different eligible school.

the user is an eligible school and the owner is not. Nor can the language ("Buildings belonging to and operated by [eligible] schools") be stretched, in my view, to cover any other circumstance other than concurrence of ownership and use by an eligible school.

The majority is saying that the language of the statute is ambiguous because it does not cover the use of the property presented here, a use it views as being worthy of favorable tax consideration. And, the analysis goes, because the language is ambiguous, extrinsic factors such as legislative history can be taken into account. Finally, because the legislative history supports an exemption here, the statute will be read accordingly. That reasoning puts the cart before the horse. The unhappy fact that the statute plainly does not permit an interpretation that would permit an exemption to a seemingly deserving petitioner does not make the provision ambiguous. *Wood, supra* (a provision is not ambiguous because it does not cover the situation presented by one of the parties). Ineligibility for an exemption in these circumstances might well be anomalous, or illogical, or even a bad policy choice; but those characterizations do not make the language ambiguous.

Because the language of the statute was not, in my view, ambiguous, there is no call to resort to extrinsic interpretative aids such as legislative history. But even assuming for the sake of argument there is ambiguity, no reading of this legislative history would justify such a stretching of the language of the statute as the majority has done. The most that can be said for the excerpts from the committee reports that have been cited, is that the Congress was in favor of granting tax exempt status to non-profit and charitable organizations that met the criteria set forth in the statute. None of the comments relied upon were directed to the circumstances presented here. And none of the comments purported to resolve the issue are presented here. The same can be said for the remarks of a senator during debate. Even if those floor remarks were on point, we have "recently cautioned against relying upon the views expressed by individual legislators during the debates preceding the enactment of a statute." *District of Columbia v. Morrissey,* 668 A.2d 792, 799 (D.C.1995). I agree with the trial judge, who reading the same legislative history, could find no basis for interpreting the language of the statute in the way the petitioners urge.

In summary, I believe the majority has erred in its interpretation of the statute.[6] First, the statute is not ambiguous, and its plain meaning does not permit an interpretation that in effect amends the statute. But even if there is some uncertainty, the majority stretches the language too far. Moreover, the majority fails to give the proper deference to the interpretation of the taxing authority, and fails to apply the well accepted principle that exemptions from taxation are construed strictly against the party seeking the exemption. Finally, the majority's reliance on the fragmentary and general remarks in the legislative history is misplaced. For all of these reasons, I dissent.

---

**6.** Because the majority finds for the tax payer under exemption 10, it did not need to address whether exemption 8 would apply. The trial court concluded that exemption 8 did not apply. I agree. In order to qualify for an exemption under this provision, the Levine School would have to establish that the premises was "used for purposes of public charity." D.C.Code § 47–1002(8). I am satisfied that it failed to make such a showing.