**WASHINGTON ETHICAL SOCIETY, a corporation, Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 13646.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 29, 1957.

Decided Oct. 17, 1957.

Mr. John Lord O'Brian, Washington, D. C., with whom Messrs. Charles A. Horsky, Bernard I. Nordlinger and Yale Kamisar, Washington, D. C., were on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and George F. Donnella, Asst. Corporation Counsel, were on the brief, for respondent.

Mr. Edward P. Morgan, Washington, D. C., filed a brief on behalf of The American Unitarian Association, as amicus curiae, urging reversal. Messrs. Vincent A. Pepper and Fred J. Eden, Jr., Washington, D. C., also entered appearances on behalf of The American Unitarian Association.

Mr. Monroe Oppenheimer, Washington, D. C., filed a brief on behalf of The American Ethical Union, as amicus curiae, urging reversal.

Mr. Abraham J. Harris, Washington, D. C., filed a brief on behalf of American Jewish Committee, as amicus curiae, urging reversal.

Before PRETTYMAN, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Petitioner appeals from a decision of the Tax Court for the District of Columbia denying tax exemption to petitioner for the building in which its services and other related activities are conducted.

The sole issue raised is whether petitioner falls within the definition of a "church" or a "religious society" and whether its property is "regularly used

for religious worship" under D.C.Code, § 47–801a (1951) which in pertinent part exempts from specified taxes:

§ 801a. "(m) Churches, including buildings and structures reasonably necessary and usual in the performance of the activities of the church. A church building is one primarily and regularly used by its congregation for public religious worship.

"(n) Buildings belonging to religious corporations or societies primarily and regularly used for religious worship, study, training, and missionary activities."

The taxing authority urges denial of the tax exemption asserting petitioner is not a religious society or church and that it does not use its buildings for religious worship since "religious" and "worship" require a belief in and teaching of a Supreme Being who controls the universe. The position of the Tax Court, in denying tax exemption, was that belief in and teaching of the existence of a Divinity is essential to qualify under the statute. Acknowledging "that the conclusion [denying tax exemption] * * * is not entirely free from doubt or one of which the Court has a firm conviction * * *" the Tax Court held the petitioner was not a religious society and not entitled to exemption under D.C.Code, § 47–801a.

Petitioner and other affiliates of the Union, which dates back to 1876, hold regular Sunday services and Sunday School classes for children; it has "Leaders" who preach and minister to the members, conducting services for naming, marrying and burying members. The "Leaders" testified in terms of "spiritual values" and "spiritual guidance" for members; one pamphlet speaks of the people's "great need for a sense of direction in their lives," and "a faith attuned to our times," and describes the group as "conceived by its founder as itself a deeply religious Movement * * * to [which] it has remained faithful. * * To our believers, Ethical Culture is a way of life—an enriching, vital and meaningful force contributing to the moral and spiritual advancement of our times." Another of its early leaders declared: "For it is the inward peace which we must gain: so to live that we feel in touch with the divine purpose which permeates the world."[1] Dr. Muzzey, one of its early spokesmen, wrote: "Everybody except the avowed atheists (and they are comparatively few) believes in some kind of God."[2]

The services of the organization held at regular hours each Sunday have the forms of worship service with Bible readings, sermons, singing and meditation familiar in services of many formal or traditional church organizations. Its program bears the words "Where Men Meet to Seek the Highest is Holy Ground."

"Leaders" of the petitioner, who are trained graduates of established theological institutions are authorized by the District of Columbia to perform marriages and they regularly conduct funeral services and naming ceremonies. The United States District Court for the District of Columbia acting under D.C.Code, § 30–106 has extended to "Leaders" or ministers of petitioner the power to perform valid marriage ceremonies by reason of being designated and authorized by a "church or religious society for that purpose." This authority is not granted as to judicial officers or other functionaries empowered to perform a civil marriage ceremony. It is granted to petitioner by virtue of recognition as a "religious society."[3]

---

1. Wolff, Twenty Years of the Ethical Movement 1876–1896 (1896).

2. While petitioner does not command or require of its followers that they believe in a Supreme Being or supernatural power but lets each member dedicate himself to the highest ideal his faith can reach, it is interesting to note that every

"Leader" who appeared on petitioner's behalf testified of his own personal belief in God as a Supreme Being.

3. For example the District Court on July 30, 1947, issued an authorization in these terms:

"The Rev. George Beauchamp of the American Ethical Union, having produced

The opinion of the Tax Court does not suggest any doubt about the good faith belief by petitioner's members that their beliefs and practices are for them a religion and a religious belief.

Reference to standard sources of definitions discloses that the terms "religion" and "religious" in ordinary usage are not rigid concepts. Indeed, the definitions in these standard works [4] taken together are by no means free from ambiguity. Some definitions would include only the Christian religion. Some call for belief in and worship [5] of a divine ruling power or recognition of a supernatural power controlling man's destiny. But also included in these definitions is the idea of "devotion to some principle; strict fidelity or faithfulness; conscientiousness, pious affecting or attachment."

Congress in granting tax exemption under this statute, like most of the states, was giving expression to a broad legislative purpose to grant support to elements in the community regarded as good for the community. In the exercise of its undoubted power Congress has extended tax immunity not only to sincere and bona fide religious activities but also to various educational and patriotic societies and groups whose programs are thought to be in the public interest and welfare. The exemption of buildings belonging to "religious corporations or societies" is in a context of exemption to art galleries, libraries, public charities, hospitals, schools and colleges, and many named organizations. To construe exemptions so strictly that unorthodox or minority forms of worship would be denied the exemption benefits granted to those conforming to the majority beliefs might well raise constitutional issues.

The question before us now is not broadly whether petitioner is in an ecclesiastical sense a religious society or a church, but narrowly whether under this particular statute it is qualified for tax exemption.[6]

We hold on this record and under the controlling statutory language petitioner qualifies as "a religious corporation or society" and that the building "is one primarily and regularly used by its congregation for public religious worship."

Reversed and remanded.

---

proof, to the satisfaction of the Court, that he is duly appointed, or ordained, as such and that he is in regular communion with the Religious Society of which he he is a member, he hereby is, this 30th day of July, 1947, authorized to celebrate the rites of marriage in the District of Columbia so long as he remains appointed or ordained by the above-named Religious Society."

4. Shorter Oxford Eng.Dic. (1955 Ed.); Webster's New International Dictionary,

2d Ed.; Black's Law Dictionary (1951 Ed.)

5. Among the definitions of the verb "to worship" is the following: "to perform religious services." Webster's New International Dictionary, 2nd Ed. It is in this sense that petitioner qualifies, not in the sense of paying homage to a supernatural being.

6. Cf. Fellowship of Humanity v. County of Alameda, Cal.App., 315 P.2d 394.