Herbert L. LIPP et al., Plaintiffs,

v.

Raymond PROCUNIER, Director, California Department of Corrections, et al., Defendants.

No. C-73-247.

United States District Court, N. D. California.

May 21, 1975.

John Eshleman Wahl, San Francisco, Cal., for plaintiffs.

Evelle J. Younger, Atty. Gen. of Cal., Sanford Svetcov, Deputy Atty. Gen., San Francisco, Cal., for defendants.

## DECISION

Before SNEED, Circuit Judge, and CARTER and EAST, District Judges *.

EAST, Senior District Judge:

At the time of the institution of these proceedings, the plaintiffs Herbert L. Lipp (Lipp), Ronald J. Kintner (Kintner) and Melvin C. Hull (Hull) were prisoners in penal institutions within the State of California; however, they are presently on parole status. Twenty-five additionally named inmates of a California penal institution have been joined as party plaintiffs.[1] Lipp, Kintner and Hull did not and the additional plaintiffs do not specifically allege that they are homosexual in sexual orientation. However, the record amply supports the fact that Lipp and Kintner displayed homosexual proclivities and acts in prison and required segregated facilities.

The remaining plaintiffs are: (a) ministers and a member of Universal Fellowship of Metropolitan Community Churches (Ministers) and (b) various Metropolitan Community Churches and Fellowships and Conferences of the Metropolitan Community Churches (Church). The Church is designed and organized to minister primarily to the spiritual and religious needs of people who are homosexual in sexual orientation.

Lipp, Kintner and Hull did and the additional plaintiffs do desire the in prison congregated ministry of the Church, and the Church, its ministers and members, desire to provide such in prison congregated services and ministry.

The defendant, Raymond Procunier (Procunier), is the duly appointed and acting Director of the California Department of Correction, charged with the lawful management of the penal institutions of that state. The remaining defendants are Superintendents of various penal institutions within California charged with the lawful management of his respective institution.

## PLAINTIFFS' CLAIM

Concisely, the plaintiffs claim that the individual defendants, acting separately or in concert, have deprived the plaintiffs of their federal constitutional rights to equal treatment under the law, to be free of cruel and unusual punishment and to freely exercise their religion by directing, ordering and commanding that religious services and ministry, as conducted by the Church, its ministers and members, intended primarily for individuals of homosexual sexual orientation, be prohibited in the penal institutions of California and specifically as set forth in the letters of Procunier dated July 21, 1972 (Ban), and of defendant, Louis S. Nelson, as Superintendent, dated February 5, 1973.[2]

---

* Honorable Joseph T. Sneed, United States Circuit Judge for the Ninth Circuit, Honorable Oliver J. Carter, United States District Judge for the Northern District of California, and Honorable William G. East, Senior United States District Judge for the District of Oregon, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated June 26, 1974.

1. The named plaintiffs bring this action as a class action. We conclude that the claims of those plaintiffs are not moot by reason of their parole status, and we decline to designate a class.

2. The Procunier letter of July 31, 1972, addressed to Rev. Joe Gilbert follows:
"Dear Mr. Gilbert:
This is a followup on our meeting of July 24 concerning your offer of assistance in counseling efforts for homosexuals in our institutions.
After careful consideration, this department will not sanction formal inmate activities organized on the basis of homosexuality. Additionally, we cannot permit church services aimed primarily at homosexuals.
As we agreed in our discussion, homosexuality poses special problems in prison. With respect to organized programs and activities, we would be particularly concerned

The plaintiffs seek injunctive relief from the Ban.

## DEFENDANTS' RETURN

Primarily, the defendants contend:

First, that the doctrines, beliefs, teachings and ministries of the Church do not constitute a bona fide religion but rather a self-proclaimed religious and social group seeking to provide in prison services in social counseling; accordingly, the named plaintiffs and the Church are without standing to assert a denial of constitutional freedom of religion.

Secondly, the Ban prohibits only in prison group or congregated religious service or social counseling conducted by Church's ministers and members for homosexually oriented inmates, and individual ministry under local prison visitation rules and procedures is not prohibited.

The Ban of in prison congregated or group religious or social services conducted by the Church's ministers or members for homosexually oriented inmates is justified by legitimate penological objectives for the welfare and safety of the inmates and the security and objectives of the institutions.

about the effect on persons with sexual identity problems. Our clinicians advise that there are a great many individuals in prison, who do not have a basic homosexual orientation, that might be misled by special programs formally endorsed and recognized by the administration.

Due to such concern, it is my current judgment that the effect of organized and recognized groups or activities for homosexuals in our institutions would be generally detrimental.

As we discussed, our institution heads may permit you and other approved members of your organization to visit individual inmates for the purpose of counseling when it appears that there may be a benefit to the individual inmate. Such visits would be conducted according to the usual visiting procedures and require the customary approvals. In evaluating each case the attitude of the inmate, and your potential for helping him, would have to be carefully reviewed.

## JURISDICTION

We note the jurisdiction of this three-judge district court under 42 U.S. C. § 1983, 28 U.S.C. § 1343(3) and (4), and § 2284.

The defendants suggest that this court abstain from adjudicating the constitutional issues raised herein and refer the cause to the courts of California for adjudication under state law. We decline.

## MOTIONS

The plaintiffs have moved for a temporary injunction against the enforcement of the Ban.

The defendants have moved for a dismissal of the complaint on the grounds that the same fails to state a claim upon which relief may be granted.

Following oral argument, the parties plaintiffs and defendants each and all moved for an order of summary judgment in their favor, respectively, whereupon the cause was submitted.

The defendants' motion for a dismissal of the complaint must be denied. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

To inquire in an individual case, your contract will be the warden or superintendent or his designee.

Sincerely"

The Nelson letter of February 5, 1973, addressed to Lipp follows:

"I have your letter dated January 26 as well as a letter, forwarded from the office of the Director of Corrections, which you addressed to the Governor under date of January 21.

I am aware of your recent self-inflicted mutilation, as well as your homosexual problems. I am sure the staff are handling your situation as best they can.

I am sorry, but your request for your own 'spiritual counselors' to come into the institution is not approved; we have adequate religious staff to serve your needs.

As to your legal material, Lt. Tabash informs me this has been given to you."

We do not deal with this refusal of prison entry by "spiritual counsellors" for the reason that the Ban, if it be such, is applicable to a single institution and not statewide.

## THE EVIDENCE

The plaintiffs have produced in evidence herein various items of documentary evidence and affidavit averments in support of and supplementing the allegations of the complaint and the exhibits attached thereto.

The defendants have produced various documentary evidence and affidavit averments in support of their contentions.

## DISCUSSION

The counter-contentions of the parties present to us a two-pronged federal constitutional question, namely:

(a) Whether the Church teaches and preaches a bona fide religion within the concept of the establishment clause of the First Amendment (freedom of belief);

(b) If so, whether the in-prison ban on the congregated practice and participation therein by the inmates and ministers of the Church unconstitutionally prohibits the free exercise of such religious belief (freedom to act).

■ We accept as our guide in reaching an appropriate disposition of those questions the principles delineated in *Sharp v. Sigler,* 408 F.2d 966, at 970 (8th Cir. 1969), and specifically as expressed by Mr. Justice Roberts in *Cantwell v. Connecticut,* 310 U.S. 296 at 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940):

> "The fundamental concept of liberty embodied in [the Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment. . . . The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the [First Amendment's proscription of any law 'respecting an establishment of religion, or prohibiting the free exercise thereof'] embraces two concepts—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection. In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom. No one would contest the proposition that a state may not, by statute, wholly deny the right to preach or to disseminate religious views. Plainly such a previous and absolute restraint would violate the terms of the guarantee. *It is equally clear that a state may by general and non-discriminatory legislation regulate the times, the places . . . of holding meetings* [italics supplied] [upon its streets]; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment."

■ These principles or precepts safeguarding freedom of religion were formulated generally for individual liberty versus governmental regulation in open society; nevertheless, such follow and abide with an inmate of a penal institution but subject to necessary and reasonable institutional regulation.

> " 'Freedom of religion can never mean freedom to interfere with the peaceful rights of others, or freedom to flagrantly disregard reasonable rules of conduct in or out of prison.' " *Sharp, supra,* at page 970, citing *Evans v. Ciccone,* 377 F.2d 4, at 6 (8th Cir. 1967); *Sostre v. McGinnis,* 334 F.2d 906, at 908 (2nd Cir. 1964), *cert. denied,* 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96.

*Freedom of Belief:*

For some persons, the disturbing feature of the Church and its ministry is the unconventional purpose of administering "primarily to the spiritual and religious needs of people who are homosexual in sexual orientation." We hold no office to delve into a discussion of the theology involved; however, we do comment that while most Christian ministries believe and consider individuals of homosexual sexual orientation to be abominations and undesirable in the eyes of God, the Church's ministers homilize well that under the Scriptures Christ considered such an individual among His brotherhood of man.

In any event, it is manifest that the mere fact of one having homosexual proclivities does not per se deprive him of legal entitlements and constitutional immunities. *Mindel v. United States Civil Service Commission,* 312 F.Supp. 485 (N.D.Cal.1970), citing *Norton v. Macy,* 135 U.S.App.D.C. 214, 417 F.2d 1161, 1163–64 (1969).

It is only the act or acts committed in the manifestations of an individual's homosexual orientation and proclivities that are forbidden under the law. *Adams v. Laird,* 136 U.S.App.D.C. 388, 420 F.2d 230, 238–39 (1969); *Wentworth v. Schlesinger,* 160 U.S.App.D.C. 172, 490 F.2d 740 (1973). Cal.Pen.Code §§ 286, 288a.

"The only appropriate and relevant inquiry is whether or not [the Church and its ministry are] a religion and whether the [inmates] possess a sincere and good faith belief in that creed. *United States v. Ballard,* 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); *United States v. Seeger,* supra [380 U.S. 163, 177, 85 S. Ct. 850, 13 L.Ed.2d 733 (1965)]." *Remmers v. Brewer,* 361 F.Supp. 537, 542 (S.D.Iowa 1973). *See Fowler v. Rhode Island,* 345 U.S. 67, 73 S.Ct. 526, 97 L. Ed. 828 (1953).

We find from the undisputed record evidence that the Church and its ministry do not teach or promote homosexuality manifestations or any sexuality among its some 15,000 members, except to acknowledge the fact of homosexual sexual orientation among humans and their need for spiritual ministry, and further that the record is devoid of any evidence tending to show that the inmates' expressed beliefs in and desires for the ministry of the Church are not sincere and genuinely felt.

We believe that the Church's ministry and work and the religion espoused by the Church and its ministry possess the cardinal characteristics associated with traditional "recognized" religions in that it teaches and preaches a belief in a Supreme Being, a religious discipline and tenets to guide one's daily existence. *Washington Ethical Society v. District of Columbia,* 101 U.S.App.D.C. 371, 249 F.2d 127 (1957), cited in *United States v. Kuch,* 288 F.Supp. 439, 444 (D.D.C. 1968); *Remmers, supra,* at 540–41.

We conclude from the affidavits and record herein that there is no genuine issue as to any material fact or the freedom of belief issue. Accordingly the plaintiffs are entitled as a matter of law to partial declaratory relief to the effect that the Church and its ministry espouses and teaches a bona fide religion aligned with the Christian beliefs and faith and is entitled to the protection of the establishment clause; and the Church, its members and the inmates have standing to contest the Ban.

*Freedom to Act:*

It is a truism that a prisoner does not lose his constitutional rights, especially those flowing from the First Amendment, with the closing of the prison gates. Nevertheless, he must sustain such restrictions upon those rights as may necessarily result from a lawful judicial sentence of imprisonment. *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

It appears from the record evidence that to alleviate these restrictions, rules

and regulations of the various penal institutions involved provide for:

    (a) The maintenance of house Chaplains and entry by outside ministries of the principal religions for in prison inmate congregated religious services, and

    (b) Private visitations with individual inmates by ministers of the various faiths, including the Church. These religious programs and visitations are on a restricted basis; *i. e.*, consistent with established reasonable rules for individual and group discipline and control for the safety of persons and property.

No challenge to these rules and regulations nor their restrictive effect upon inmate participation in religious practice is involved herein.

It is manifest from the face of the Ban that prison access by ministers of the Church for the purpose of conducting congregated religious services for inmates with homosexual proclivities or mere interest is foreclosed thereunder. It is the propriety of that complete ban which is under challenge.

■■■ In addition to such restrictions and infringement of inmate fundamental liberties as results from the mere fact of lawful incarceration, prison authorities may impose further restrictions on those liberties and freedoms by rules and regulations that are reasonable and necessary in the administration of prison population, maintenance of discipline and control of dangers and hazards presented. *Cruz, supra,* 405 U.S. at 321, 92 S.Ct. 1079; *Burnham v. Oswald,* 342 F.Supp. 880, 887 (W.D.N.Y.1972); *Carothers v. Follette,* 314 F.Supp. 1014 (S.D.N.Y.1970); *Hillery v. Procunier,* 364 F.Supp. 196 (N.D.Cal.1973).

■■■ As pointed out above, the Ban is a complete bar to a First Amendment right; that is, in prison congregated religious services and practice of a religious belief by the Church, its ministers, and the inmates, whether having homosexual proclivities or not. Accordingly, this court is obliged to rigidly scrutinize the Ban under an appropriate standard or test. We are satisfied from our reading of the authorities that the appropriate standard or test in this cause requires the prison authorities to show that the Ban subjugating the freedom is reasonably necessary to promote a "compelling state interest." *Walker v. Blackwell,* 411 F.2d 23, 24 and 25 (5th Cir. 1929); *Long v. Parker,* 390 F.2d 816 (3d Cir. 1968). *See Howe v. Brown,* 319 F.Supp. 862, 865 (N.D.Ohio 1970); *Carothers, supra,* and *Hillery, supra.*

■■■ The orderly administration of the penal laws of a given state, which necessarily includes an orderly administration of prison population and control of hazards and dangers to inmates and property is of itself indisputably a compelling state interest of that state. *Carothers, supra,* at 1024.

Whether the Ban is reasonable and necessary to promote that compelling state interest in an orderly prison administration is dependent upon the attendance or existence of facts and circumstances which, but for the Ban, present a clear and present danger of a breach of prison security, discipline and safety to inmates and property. *Long, supra* at 822. *See Burnham, supra.*

■■■ Whether the proclivities, habits or inclinations of an individual or group of prison inmates to act present a clear and present danger to prison discipline and control of prison safety to persons and property is a question of fact; first, to be determined and asserted by prison authorities, and second, if contested, by appropriate fact finding procedure. By the very nature of an orderly prison population, the expertise of prison officials must be given more than mere credibility and deference.

■■■ At this juncture, we note that the facts presented in the affidavits herein are in direct conflict as to whether the proclivities, habits or inclinations of the individual or group of individuals

of homosexual orientation, if permitted to congregate for religious service in prison, will present a clear and present danger to prison discipline, control, and safety to persons and property. Accordingly there are existing genuine issues as to material facts on the plaintiffs' freedom to act issue.

## CONCLUSION

We conclude that judgment and decree relief in favor of the plaintiffs on the declared infringement of the plaintiffs' freedom of belief issue shall await further order herein, and we direct an evidentiary hearing on the plaintiffs' freedom to act issue, all pursuant to Rule 56(d), Fed.R.Civ.P.